UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Aron Avram Shamilov,<br><br>Defendant. | Case No. 19-cr-238 (SRN)<br><br><br><br>**ORDER** |

Jordan L. Sing, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for the Government

Aron Avram Shamilov, Reg. No. 21230-041, FMC-Rochester, PMB 4000, Rochester, MN 55903-4000, Pro Se Defendant

SUSAN RICHARD NELSON, United States District Judge

Before the Court is a letter filed on April 13, 2020 by Defendant Aron Avram Shamilov [Doc. No. 10]. The Court construes the letter as Shamilov's Pro Se Motion for Release. The Government filed a response in opposition to the Motion for Release. (Gov't's Opp'n [Doc. No. 12].) Based on a review of the file, record, and proceedings herein, and for the following reasons, the Court denies Defendant's motion.

## I.  BACKGROUND

### A.  Procedural and Factual Background

In 2017, the Government charged Shamilov with impersonating a federal officer, which he did in order to fraudulently obtain an apartment lease. (*United States v. Shamilov*,

17-cr-239 (SRN/DTS), Indictment [Doc. No. 12].)  Although Shamilov had been on pretrial release for this offense, after he violated certain conditions of release, the Court ordered that he be detained.  (17-cr-239, Order of Detention [Doc. No. 28].)  While on release, Shamilov had lied to U.S. Pretrial Services about his employment, presenting them with a forged letter purportedly from a Minnetonka restaurant that claimed to have hired him as a chef.  (*See id.* at 2.)  In March 2018, the Court sentenced Shamilov to a six-month term of imprisonment, followed by a one-year term of supervised release.  (17-cr-239, Sentencing Judgment [Doc. No. 43].)

Upon his release to a residential reentry center after serving his term of imprisonment, Shamilov reoffended by obtaining a power of attorney, driver's license, and a social security card from another resident.  (17-cr-239, Order Granting Pet. to Modify Supervised Release [Doc. No. 49] at 1.)  Also while on supervised release, Shamilov wrote checks with insufficient funds, including checks to large retailers for consumer goods, as well as checks to local car dealerships in amounts exceeding $50,000 in order to obtain approximately 20 luxury vehicles.  (17-cr-239, Plea Agmt. [Doc. No. 7] at ¶ 2.)  Shamilov took possession of some of the vehicles and returned them after his checks bounced.  (*Id.*)  He also wrote a check in excess of $39,000 in an attempt to purchase luxury jewelry.  (*Id.*)  In addition, Shamilov stole other individuals' personal identifying information, including bank information and checks, which he used to pay his personal expenses.  (*Id.*)

Instead of appearing at the revocation hearing, Shamilov fled to Chicago, where he was subsequently arrested and removed to Minnesota.  (*See* 17-cr-239 [Doc. Nos. 63–66].)

The Court revoked Shamilov's supervised release and sentenced him to an additional six-month term of imprisonment. (17-cr-239 (Sentencing Judgment [Doc. No. 75].)

In September 2019, the Government charged Shamilov by way of an Information with aggravated identity theft in the instant case. (19-cr-238 (Information [Doc. No. 1] at Ct. 1).) Shamilov pleaded guilty, and the Court imposed full restitution and sentenced him to a 24-month term of imprisonment, followed by a one-year term of supervised release. (19-cr-238 (Sentencing Judgment [Doc. No. 8].)

Shamilov is incarcerated at FMC-Rochester, in Rochester, Minnesota. He has a projected release date of May 10, 2021. BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed Apr. 28, 2020). On April 3, 2020, the BOP received Shamilov's internal request for compassionate release due to his concerns about the COVID-19 virus. (Def.'s Mot. at 10.) He cited longtime issues with asthma, as well as the need to provide care for his mother, who has cancer and other medical problems. (*Id.*) The Bureau of Prisons ("BOP") agreed to review Shamilov's request. (*Id.*)

### B. Parties' Arguments

Shamilov's motion to the Court is nearly identical to his request to the BOP. He seeks compassionate release in light of the risks associated with the COVID-19 pandemic. (Def.'s Mot. at 1.) He explains that a lifelong diagnosis of asthma—which, he contends, is documented in the Presentence Investigation Report ("PSR")—causes him to "constantly experience shortness of breath, lightheadedness, and other respiratory symptoms." (*Id.*) He contends that the prison environment puts him "at the greatest risk of contracting the virus." Further, Shamilov notes that his mother has cancer, and his youngest sister, who is

a minor, is "unfit to take care of [their] mother." (*Id.*)  Citing the CARES Act, Shamilov believes that these circumstances present extraordinary and compelling reasons to grant his request for compassionate release.  (*Id.*)

In opposition, the Government argues that Shamilov's motion should be denied because he has failed to provide 30 days for the BOP to consider his request.  (Gov't's Opp'n at 5.)  As a result, the Government contends that the Court's review of Shamilov's motion would undercut the BOP's ability to address his request.  (*Id.* at 5–6.)  Moreover, the Government maintains that the BOP is taking appropriate action to curtail the spread of COVID-19 within its facilities.  (*Id.* at 8–9.)  Further, the Government asserts, even if Shamilov meets the jurisdictional requirements for a motion for compassionate release, his motion fails on the merits.  (*Id.* at 10–17.)

## II.     DISCUSSION

The First Step Act, Pub. L. No. 115-391, was enacted in December 2018, with the goal of reducing federal inmates' recidivism rates.  As relevant here, the First Step Act revised the provisions for compassionate release, allowing defendants—not just the BOP— to move for such relief.  18 U.S.C. § 3582(c)(1)(A).  But a defendant may only bring a motion for compassionate release after having "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*

On April 3, 2020, Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act, Pub. L. No. 116-136, to expand the group

4

of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus and its effect on prison populations. The BOP began reviewing all inmates who have COVID-19 risk factors, starting with inmates incarcerated at prisons that have experienced COVID-19 cases (FCI-Oakdale, FCI-Danbury, FCI-Elkton) and similarly-situated facilities to determine which inmates are suitable candidates for home confinement. BOP Update on COVID-19 & Home Confinement, https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last accessed Apr. 28, 2020).

Because the BOP is still considering Shamilov's pending request and independently reviewing all inmates with COVID-19 risk factors, the administrative process must be followed. The Court cannot entertain Shamilov's motion due to his failure to fully exhaust the administrative process. *See, e.g., United States v. Bergren*, No. 00-cr-375 (DWF/RLE), 2020 WL 1910585, at *1 (D. Minn. Apr. 20, 2020) (denying motion for compassionate release due to COVID-19 for failure to exhaust and on the merits); *United States v. Annis*, 16-cr-1951 (JRT/KMM), 2020 WL 1812421, at *2 (D. Minn. Apr. 9, 2020) (finding the court had no authority to grant compassionate release due to COVID-19 pursuant to 18 U.S.C. § 3582(c)(1)(A) because the defendant had not exhausted his administrative remedies).

But even if Shamilov had exhausted his administrative remedies, release under these facts is not warranted. Under 18 U.S.C. § 3582(c)(1)(A), after an inmate has exhausted his or her administrative remedies, the court may reduce a sentence, after it considers the factors in 18 U.S.C. § 3553(a), to the extent applicable, if it finds that "extraordinary and

compelling reasons warrant such a reduction," and a reduction is consistent with the applicable policy statements in the Sentencing Guidelines. 18 U.S.C. § 3582(c)(1)(A).

While the statute does not define "extraordinary and compelling reasons," the Guidelines provide policy statements concerning the limited circumstances in which a court may reduce a prisoner's sentence. U.S.S.G. § 1B1.13, Commentary. As relevant here, a defendant's medical condition and special family circumstance, in narrow circumstances, may form the basis for a reduction in sentence. *See id.* Courts again consider the sentencing factors under § 3553, and if the defendant is not a danger to the community, may determine that a reduction is warranted because (1) the defendant is suffering from a terminal illness; or (2) from a serious physical or medical condition; serious functional or cognitive impairment; or deteriorating physical or mental health due to aging "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, Cmt. 1(A).

With respect to family circumstances, courts may also find a reduction in sentence is warranted because of the death or incapacitation of the caregiver of the defendant's minor child or children, or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. *Id.*, Cmt. 1(C). Finally, courts may consider "other reasons," if the defendant's case involves other extraordinary and compelling reasons. *Id.*, Cmt. 1(D).

As to Shamilov's medical condition, he offers no current documentation of his ongoing issues with asthma. *See United States v. Gutierrez*, No. CR 05-0217 RB, 2019

WL 1472320, at *2 (D. N.M. Apr. 3, 2019) (denying motion for compassionate release that was unsupported by sufficient medical documentation). While he relies on purported statements in the PSR concerning his asthma, the PSR reflects that Shamilov reported being "in good physical health." (17-cr-239 (PSR [Doc. No. 34] ¶ 68.[1]) Granted, the PSR noted that Shamilov experienced severe respiratory issues between ages seven and eight, but it did not state that the issues were recurrent. (*Id.*) Rather, it stated that Shamilov self-reported no "ongoing medical issues." (*Id.*)

Also, Shamilov is 26 years old—not an age that is particularly susceptible to an increased risk of COVID-19 complications, and is incarcerated in a facility in which there are no cases of the virus, as of this writing. BOP COVID-19 Coronavirus Resource Page, https://www.bop.gov/coronavirus/ (last accessed Apr. 28, 2020). Since January 2020, the BOP has been preparing to mitigate the effects of a potential COVID-19 outbreak. BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last accessed Apr. 28, 2020). Among the measures the BOP has taken are: (1) prohibiting all social and volunteer visits; (2) suspending inmate movement, with limited exceptions; (3) suspending legal visits for 30 days (with case-by-case exceptions); (4) screening staff through self-reporting and temperature checks; (5) screening new inmates, quarantining asymptomatic inmates, and isolating and testing inmates with exposure risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. BOP

---

[1] As the Government notes, there is only one PSR for Shamilov, although there are two criminal cases, in light of the Court's familiarity with him and in an effort to resolve his second conviction in an expedited manner.

Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed Apr. 28, 2020).  These efforts appear to have been successful at the majority of federal prisons, and as of this writing, at FMC-Rochester.  Moreover, as FMC-Rochester is a prison that offers full medical care, Shamilov is incarcerated at a facility that is well-positioned to provide medical treatment if he should become ill.

Regarding his family circumstances, while the Court is sympathetic to Shamilov's concerns about his mother's health and his sister's ability to care for her, his request does not fall within the Guidelines' policy statement.  He does not seek release because he is the only available person to care for a minor child or spouse.  *See* U.S.S.G. § 1B1.13, Cmt. 1(C).  And while he contends that his mother's condition is verified in the PSR, it contains no finding that she suffers from cancer.  Moreover, the Government observes that while Shamilov states that his mother has been ill since 2016, the intervening period "directly correlates with most of his relevant criminal conduct."  (Gov't's Opp'n at 15.)

Accordingly, even on the merits, the Court finds that neither Shamilov's medical condition nor his family circumstances warrants compassionate release.  Nor does the Court find that other compelling circumstances support his request.  In fashioning an appropriate sentence, the Court previously applied the § 3553 factors to Shamilov.  There is no change in circumstances that supports the reduction of his sentence.

While the Court understands Shamilov's concerns about his health and safety, his Motion for Release is denied for all of the reasons stated above.

## III.  CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Pro Se Motion for Release [Doc. No. 10] is **DENIED**.


Dated: April 28, 2020

s/Susan Richard Nelson  
SUSAN RICHARD NELSON  
United States District Judge
